IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:14-CV-0718-FL

**Larry McLean**,

        Plaintiff,

v.

**Jeffrey M. Leonard,** et al.

        Defendants.

**Memorandum & Recommendation**

    Defendants Wake County and Wake County Sheriff Donny Harrison seek an order from the court dismissing them from the lawsuit brought by Plaintiff Larry McLean. D.E. 30. McLean alleges that Wake County, Harrison, and several other defendants committed a variety of constitutional and state common law torts in connection with his arrest and detention in February 2014. The Moving Defendants claim that they are entitled to dismissal because they are immune from suit or because McLean has failed to allege sufficient facts to establish their liability. McLean contests some, but not all, of their arguments.

    A review of the Complaint and the relevant case law demonstrates that Harrison and Wake County are entitled to be dismissed from this action. North Carolina law establishes that Wake County cannot be held liable for constitutional violations arising out of law enforcement activities undertaken by Sheriff Harrison and his deputies. McLean's § 1983 claims against Harrison, in his official capacity, are insufficient because he has not alleged sufficient facts to show that the alleged constitutional violations were the result of an official policy or custom of the Sheriff's Office. Similarly, McLean failed to state a § 1983 claim against Harrison in his individual capacity because the factual allegations do not show that Harrison was aware that his

deputies' activities posed a pervasive and unreasonable risk of constitutional injury to the public. Furthermore, McLean's state common law tort claims should be dismissed because the Moving Defendants are entitled to governmental immunity and public official's immunity. Therefore, the undersigned recommends that the district court grant Harrison and Wake County's Motion to Dismiss.

## I. Background

In the early hours of February 7, 2014, McLean's evening out with his fiancée was interrupted when he was pulled over in Franklin County, without explanation, by Wake Forest Police Officer T.C. Webb. Compl. ¶¶ 18, 23, D.E. 1. Webb stopped McLean as a result of a practice referred to as "Bingo Hunting," (*id.* ¶ 23) which involves law enforcement officers randomly checking the license plates of motorists in the hopes of finding evidence of criminal activity (*id.* ¶ 41). Shortly thereafter, Sergeant J.J. Jefferson of the Wake Forest Police Department joined Webb at the scene of the traffic stop. *Id.* ¶ 26. Webb and Jefferson ordered McLean out of his car, handcuffed him, and placed him under arrest pursuant to an Order for Arrest ("OFA") from Franklin County. *Id.* ¶¶ 26, 27. McLean objected to being arrested and told the officers that the OFA was related to a case that was dismissed in 2012. *Id.* ¶ 28. Shortly after placing McLean under arrest, Webb and Jefferson learned that the OFA was accompanied by a "Do Not Arrest" order. *Id.*

Despite McLean's protests and their knowledge of the existence of a Do Not Arrest order, Webb and Jefferson decided to transport McLean to the Wake County Detention Center. *Id.* ¶ 29. Webb took McLean before a Wake County Magistrate who had McLean photographed, fingerprinted, and detained until such time as he could post a $100,000 secured bond. *Id.* ¶ 31.

Upon his admission to the Wake County Detention Center, McLean was strip searched, subjected to a cavity search, had his personal property seized, and was placed in the general jail population. *Id.* ¶ 32. Detention center staff did not allow McLean to use the telephone and refused to contact Franklin County to investigate McLean's claim that he should be released. *Id.* ¶ 33. Six days later, McLean was released from the Wake County Detention Center after his attorney contacted the Franklin County District Attorney's Office about his arrest.[1] *Id.* ¶ 31.

McLean initiated this action by filing a Complaint on October 28, 2014. His Complaint names Jeffrey Leonard, Chief of Police for Wake Forest; Officer T.C. Webb and Sergeant J.J. Jefferson of the Wake Forest Police Department; the Town of Wake Forest; Wake County; and Wake County Sheriff Donnie Harrison as defendants. McLean claims that the Defendants are liable under 42 U.S.C. § 1983 for violating his constitutional rights; are liable under 42 U.S.C. § 1986 for their knowledge of a conspiracy to violate his civil rights; and are liable for committing the state common law torts of assault and battery, false imprisonment, and negligent infliction of emotional distress. He seeks more than $2,000,000 in compensatory and punitive damages.

## II.     Analysis

### A.     Standard of Review for a Motion Pursuant to Rule 12(b)(6).

Harrison and Wake County contend that they should be dismissed from this action because the Complaint fails to state a claim upon which relief may be granted. The Supreme Court has explained that in order to withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

---

[1] The exact reason for McLean's release is not described in the Complaint.

Therefore, while a court must accept all the factual allegations contained in a complaint as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.*

After *Iqbal*, a court considering a motion under Rule 12(b)(6) must subject a complaint to a two-part test. First, the court must identify the allegations in the complaint that are not entitled to the assumption of truth because they are conclusory in nature or nothing more than a formulaic recitation of the elements of a claim. *Id.* at 679. Then, taking the remaining factual allegations as true, the court must determine whether the complaint "plausibly suggest[s] an entitlement to relief." *Id.* If, after conducting this two-part analysis, "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'shown' — 'that the pleader is entitled to relief'" *Id.* If a party fails to show that they are entitled to relief, the court must dismiss the deficient claims.

### B. Section 1983 Claims against Wake County

McLean seeks to hold Wake County liable[2] for the constitutional and common law torts allegedly committed by deputies in the Wake County Sheriff's Office. According to McLean, the County is "responsible for the polices, practices[,] and procedures established and executed by" Sheriff Harrison and his deputies because the County "appropriates funds and establishes the budget" for the Sheriff's Office. Compl. ¶ 9, D.E. 1. Wake County argues that it cannot be held liable for any tortuous conduct committed by the Sheriff or his deputies because, under the North Carolina Constitution, the Office of Sheriff is a distinct legal entity from the county he serves. In light of the numerous cases holding that North Carolina law does not impose liability upon a

---

[2] Given the inclusion of Wake County in the case caption and McLean's opposition to Wake County's Motion to Dismiss, the court will assume that McLean intends for Wake County to be a party to this action despite the fact that the Complaint states in two separate paragraphs that Wake County is not a party to this action. Compl. ¶ 9, 36, D.E. 1.

4

municipality for the actions of a Sheriff and his deputies, Wake County's Motion should be granted.

Under § 1983, a local municipality, such as Wake County, may only be held liable for actions for which it has final policymaking authority. *City of St. Louis v. Prapotnik*, 485 U.S. 112, 123 (1988). The question of whether a county has final policymaking authority depends on how the state has allocated power and responsibility between its various governmental entities. *McMillian v. Monroe County*, 520 U.S. 781, 786 (1997); *Dotson v. Chester*, 937 F.2d 920, 924 (4th Cir. 1991). As this court has previously recognized, "under North Carolina law, any allegations relating to personnel, training, or other law enforcement policies at the county jail fall within the sheriff's policymaking authority and are not attributable to the county." *Jones v. Harrison*, No. 4:12-cv-90-D, 2013 WL 1452861, *2 (E.D.N.C. Apr. 9, 2013) (discussing statutory and constitutional duties and responsibilities of a sheriff); *Engleman v. Cumberland County*, No. 5:12-cv-00147-FL, 2013 WL 157065, * 5 (E.D.N.C. Jan. 15, 2013); *Vaught v. Ingram*, No. 5:10-ct-3009-FL, 2011 WL 761482, *4 (E.D.N.C. Feb 24, 2011); *Parker v. Bladen County*, 583 F. Supp. 2d 736, 739 (E.D.N.C. 2008). This is true, even though Wake County provides the funding for the Sheriff's Office. *See Engleman*, 2013 WL 157065, *5 (citing *McMillian v. Monroe County*, 520 U.S. 781, 791-92 (1997)). As McLean's constitutional claims against Wake County are based solely upon the alleged actions of Harrison and his deputies, Wake County is entitled to have the § 1983 claims against it dismissed.

### C. Section 1983 Claims against Sheriff Harrison

McLean's first claim against Harrison arises out of 42 U.S.C. § 1983, which creates civil liability for any person acting under the color of state law who deprives a plaintiff of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. Therefore,

5

in order to state a claim under § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). McLean seeks to hold Harrison liable in both his individual and official capacities. The court will address each type of claim separately.

1.   **Official Capacity Claims**

McLean's claim against Harrison in his official capacity is, in reality, a claim against the Office of Wake County Sheriff. *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). As such, his Complaint must contain sufficient allegations to show that the alleged constitutional injury is attributable to an official policy, procedure, or custom of the Sheriff's Office. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). McLean can make this showing in one of four ways:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999)).

McLean appears to base his official capacity claim against Harrison on the allegation that Harrison failed "to supervise his deputies and failed to develop any departmental policies or procedures to prevent or reduce the occurrences of wrongful arrests and improper incarcerations…." Compl. ¶ 44, D.E. 1. However, an unsupported allegation that a constitutional violation was the result of an official policy or custom is insufficient to withstand a

6

motion to dismiss. *See Barrett v. Bd. of Educ. of Johnston County, N.C.*, 590 F. App'x 208, 210 (4th Cir. 2014) ("There were no factual allegations showing that the Board had a policy, custom, or practice that led to the alleged violations. The Appellants merely expressed a belief or an opinion without any supporting factual allegations."); *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) ("[N]aked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility to entitlement for relief."); *Engleman*, 2013 WL 157065, *8 ("Here, plaintiff has alleged a single incident of misconduct, and there is nothing in the complaint that would support a finding that the conduct was attributable to a policy or custom of the sheriff...."). Therefore, McLean's § 1983 claim against Harrison in his official capacity should be dismissed for failure to state a claim upon which relief may be granted.

McLean's official capacity claim against Harrison is also subject to dismissal for two additional reasons. First, McLean could not hold Harrison liable for failing to develop policies to prevent wrongful arrests because McLean was not arrested by Harrison or one of his deputies. Compl. ¶ 26, D.E. 1. Second, the Complaint establishes that the Wake County Sheriff held McLean in custody pursuant to the OFA and an order from a Wake County Magistrate. Compl. ¶ 31, D.E. 1. In such circumstances, a sheriff does not violate a detainee's Fourteenth Amendment rights by failing "to investigate independently every claim of innocence...." *Baker v. McCollan*, 443 U.S. 137, 146 (1979). Thus, McLean cannot maintain an official capacity claim against Harrison under § 1983 and his claims should be dismissed.

### 2. Individual Capacity Claims

McLean also seeks to hold Harrison liable in his individual capacity for the actions of his deputies. In order to establish supervisory liability under § 1983, a plaintiff must allege and show that

> (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices;" and (3) there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

In this case, McLean failed to sufficiently allege that Harrison had knowledge of "a pervasive and unreasonable risk" of constitutional injury. *Shaw,* 13 F.3d at 799. In order to satisfy this element, the Complaint must contain sufficient factual allegations to establish "that the conduct is widespread, or at least has been used on several different occasions, and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Id.*; *see also Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983) (supervisory liability requires "a history of widespread abuse").

Here, the Complaint does not contain the necessary allegations to establish Harrison's supervisory liability. Instead, McLean's claim against Harrison is based solely upon the circumstances of his arrest and detention. A single incident or a series of isolated incidents are insufficient to establish supervisory liability under § 1983. *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984). Therefore, McLean has failed to state a claim against Harrison in his individual capacity and the Motion to Dismiss should be granted.

**D.     Section 1986 Claim against Wake County and Sheriff Harrison**

McLean brings a cause of action against the Defendants for failure to prevent his arrest, in violation of 42 U.S.C. § 1986. Section 1986 provides that "[e]very person who, having knowledge of the wrongs conspired to be done, and mentioned in [42 U.S.C. § 1985] … shall be liable to the party injured … for all damages …." 42 U.S.C. § 1986. Courts have held that a plaintiff may not maintain a claim under § 1986 if they have not brought a valid claim under §1985. *Buschi v. Kirven*, 775 F.2d 1240, 1243 (4th Cir. 1985). McLean's failure to raise a § 1985 claim precludes him from advancing a claim under § 1986. *Dial v. Robeson County*, 7:14-cv-125-BO, 2014 WL 5793847, *2 (E.D.N.C. Nov. 5, 2014). *See Justice v. White*, 5:13-cv-548-FL(2), 2014 WL 537017, *6 ("Having failed to state a claim for relief under [§ 1985], Plaintiff has likewise failed to allege claims for relief under §§ 1986 and 1988."). Therefore, the undersigned recommends that the district court dismiss McLean's claim under § 1986.

**E.     State Law Tort Claims**

The Complaint also brings state common law tort claims for assault and battery, false imprisonment, and negligent infliction of emotional distress against all Defendants. Harrison and Wake County maintain that these claims should be dismissed on the basis of governmental immunity, public official's immunity, and a general failure to allege sufficient factual allegations to establish any of these causes of action. McLean conceded these arguments by failing to address them in any way.[3] *Feldman v. Law Enforcement Associates Corp.*, 955 F. Supp. 2d 528, 536 (E.D.N.C. 2013) (finding that a failure to respond to an argument in a dispositive motion constitutes a concession of that argument), *aff'd*, 752 F.3d 339 (4th Cir. 2014); *Kinetic Concepts,*

---

[3] Curiously, McLean's Response argues that the Motion to Dismiss should be denied because Defendants Webb and Jefferson, members of the Town of Wake Forest's Police Department, committed various common law torts against him despite the fact that they are not parties to the Motion to Dismiss. Pl's Resp. at 22–23, D.E. 46.

*Inc. v. Convatec Inc.*, No. 1:08-cv-00918, 2010 WL 1667285, at *8 (M.D.N.C. Apr. 23, 2010) (citing cases). *See Mitchell v. Winston-Salem*, No. 1:04-cv-1103, 2006 WL 889552, at *3 (M.D.N.C. Mar. 29, 2006) ("When a party filing a lawsuit does not evidence sufficient interest to oppose a case dispositive motion, there likely will be no good reason to require defendant to continue to be involved."). As a result, the undersigned recommends that these claims be dismissed.

However, even if McLean had addressed these arguments, the district court should grant the Motion to Dismiss. McLean's claims against Harrison, in his official capacity, and Wake County are barred by the doctrine of governmental immunity because McLean failed to allege a waiver of immunity in his Complaint or name the Sheriff's surety as a party. *See, e.g.*, *Robinson v. Bladen County Sheriff Dept.*, No. 7:10–CV–146–BO, 2010 WL 4054389, at *4 (E.D.N.C. Oct. 14, 2010) (dismissing the plaintiff's state law claims against sheriff and sheriff deputies in their official capacities where plaintiff failed to allege waiver of sovereign immunity through the purchase of liability insurance or through the purchase of a surety bond). Additionally, McLean's claims against Harrison, in his individual capacity, are barred by the doctrine of public officer's immunity because the Complaint fails to allege sufficient facts to show that Harrison acted maliciously or corruptly towards McLean. *Brown v. Town of Chapel Hill*, 756 S.E.2d 749, 755 (N.C. Ct. App. 2014) (applying public officer's immunity to claims of assault and false imprisonment against a law enforcement officer); *Russ v. Causey*, 732 F. Supp. 2d 589, 613 (E.D.N.C. 2010) (applying public officer's immunity to a claim of negligent infliction of emotional distress); *Turner v. City of Greenville*, 197 N.C. App. 562, 566, 677 S.E.2d 480, 483 (N.C. Ct. App. 2009). (holding that public officer's immunity absolved a police officer of

individual liability for assault and battery). Therefore, the district court should dismiss McLean's state common law tort claims against Harrison and Wake County.

### F. Punitive Damages

Harrison and Wake County also argue that McLean's request for punitive damages should be dismissed because an award of punitive damages is not authorized by law and McLean has failed to allege facts establishing that Harrison acted in a sufficiently culpable manner to be liable for punitive damages. McLean failed to respond to their arguments on this issue, so the court will, again, consider the matter to be conceded. In any event, the law does not allow McLean to recover punitive damages from Wake County or Harrison in his official capacity. *See Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) ("[A] municipality is immune from punitive damages under 42 U.S.C. § 1983"); *Morris v. Edmonds*, No. 5:08-CV-239-FL, 2008 WL 2891014, at *9 (E.D.N.C. July 25, 2008).

McLean's request for Harrison in his individual capacity does not fare any better. In order to be entitled to recover punitive damages from a public officer under § 1983, the plaintiff must allege and show that the defendant's conduct was "motivated by evil motive or intent, or … involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 35 (1983). Similarly, North Carolina law authorizes the recovery of punitive damages only if a plaintiff can show by clear and convincing evidence that the defendant's conduct was accompanied by (1) fraud, (2) malice, or (3) willful or wanton conduct. N.C. Gen. Stat. § 1D-15(a) & (b). Under North Carolina law, punitive damages may not be awarded "solely on the basis of vicarious liability for the acts or omissions of another." *Id.* at 1D-15(c).

Here, the Complaint does not contain sufficient factual allegations, beyond naked assertions and conclusory allegations, to establish that McLean is entitled to recover punitive

damages against Harrison in his individual capacity. Therefore, the undersigned recommends that the district court dismiss McLean's claim for punitive damages against Harrison and Wake County.

**IV. Conclusion**

For the foregoing reasons, the undersigned recommends that the district court grant the Motion to Dismiss (D.E. 30).

Furthermore, the court directs that the Clerk of Court serve a copy of this Memorandum and Recommendation on each of the parties or, if represented, their counsel. Each party shall have until **September 2, 2015,** to file written objections to the Memorandum and Recommendation. Any responses to the written objection shall be filed no later than **September 16, 2015**. The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the**

**Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

Dated: August 19, 2015.

_____
ROBERT T. NUMBERS, II
UNITED STATES MAGISTRATE JUDGE