IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:14-CV-718-FL

| | | |
|---|---|---|
| LARRY McLEAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| JEFFREY M. LEONARD, individually and in his official and supervisory capacities as the Chief of Police for the Town of Wake Forest, North Carolina Police Department, T.C. WEBB, individually and in his official capacity as a Police Officer with the Town of Wake Forest, North Carolina Police Department and J.J. JEFFERSON, individually and in his official and supervisory capacities as a Police Sergeant with the Town of Wake Forest, North Carolina Police Department and TOWN OF WAKE FOREST, North Carolina and DONNIE HARRISON, individually and in his official capacity as Sheriff for Wake County, North Carolina, and WAKE COUNTY, North Carolina, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | | |

This matter is before the court on motion to dismiss by defendants Donnie Harrison ("Harrison") and Wake County, North Carolina ("Wake County"), pursuant to Federal Rule of Civil Procedure 12(b)(6). (DE 28). Pursuant to 28 U.S.C. § 636(b)(1)(B), United States Magistrate Judge Robert T. Numbers, II, entered memorandum and recommendation ("M&R"), wherein it is recommended that the motion to dismiss be granted. (DE 56). Plaintiff filed objections to the M&R, and defendants submitted no response in the allotted time period. (DE 61). In this posture, the

issues raised are ripe for ruling. For the following reasons, the court adopts the M&R and grants the motion to dismiss.

## BACKGROUND

Plaintiff Larry McLean ("McLean") initiated this action on October 28, 2014, against Jeffrey Leonard, Chief of Police for Wake Forest; Officer T.C. Webb and Sergeant J.J. Jefferson of the Wake Forest Police Department; the Town of Wake Forest; Wake County; and Wake County Sheriff Donnie Harrison. Plaintiff claims defendants are liable under 42 U.S.C. § 1983 for violating his constitutional rights, under 42 U.S.C. § 1986 for knowing of a conspiracy to violate his civil rights, and under state common law for torts of assault and battery, false imprisonment, and negligent infliction of emotional distress. He seeks more than $2,000,000.00 in compensatory and punitive damages.

Defendants may be arranged into two groups according to their involvement in plaintiff's arrest and their answers to plaintiff's complaint: 1) defendants Leonard, Webb, Jefferson, and the Town of Wake Forest, and 2) defendants Harrison and Wake County.[1] On January 12, 2015, defendants Harrison and Wake County filed a motion to dismiss all claims against them for failure to state a claim, under Federal Rule of Civil Procedure 12(b)(6). The court referred the motion to dismiss to the magistrate judge, and the M&R was entered on August 19, 2015. In the M&R, it is recommended that the court dismiss the federal constitutional claims against defendants Harrison and Wake County because North Carolina law establishes that Wake County cannot be held liable for constitutional violations arising out of law enforcement activities undertaken by the Sheriff's Office. Furthermore, it is recommended that plaintiff failed to allege sufficient facts to show any

---

[1] All use of the term "defendants" references defendants Harrison and Wake County.

§ 1983 violations resulted from any official policy set by defendant Harrison and failed to state a claim against defendant Harrison in his individual capacity because there is insufficient evidence to show that his deputies' activities posed a pervasive and unreasonable risk of constitutional injury. Finally, it is recommended that plaintiff's state common law tort claims be dismissed because both defendants are entitled to governmental immunity and defendant Harrison enjoys public official's immunity. On September 10, 2015, plaintiff filed objections to the M&R, and defendants have submitted no response. (DE 61).

## STATEMENT OF FACTS

The court adopts and incorporates in large part herein the summary statement of facts set forth in the M&R. At approximately 1:00 AM on February 7, 2014, plaintiff and his fiancé were driving home from dinner when he was pulled over by defendant Webb. (Compl. ¶¶ 18, 23, DE 1). Plaintiff alleges that defendant Webb stopped him while conducting a practice termed "Bingo Hunting," in which law enforcement officers randomly check motorists' license plates in the hopes of finding evidence of criminal activity. (Id. ¶¶ 23, 41). Shortly thereafter, defendant Jefferson joined defendant Webb at the traffic stop, and both defendants ordered plaintiff out of his car. (Id. ¶¶ 26, 27). Defendants Jefferson and Webb handcuffed plaintiff and placed him under arrest pursuant to an Order for Arrest ("OFA") from Franklin County. (Id.). Plaintiff objected to being arrested and told defendants that the OFA was related to a case that was dismissed in 2012. (Id. ¶28). Shortly after placing plaintiff under arrest, defendants Webb and Jefferson learned that the OFA was accompanied by a "Do Not Arrest" order. (Id.).

Nonetheless, defendants Webb and Jefferson transported plaintiff to the Wake County Detention Center. (Id. ¶29). Defendant Webb took plaintiff before a Wake County Magistrate who

3

ordered plaintiff photographed, fingerprinted, and detained until such time as he could post a $100,000.00 secured bond. (Id. ¶31). Upon his admission to the Wake County Detention Center, plaintiff was strip searched, subjected to a cavity search, had his personal property seized, and was placed in the general jail population. (Id. ¶32). Detention center staff did not allow plaintiff to use the telephone and refused to contact Franklin County to investigate plaintiff's claim that he should be released. (Id. ¶33). Six days later, plaintiff was released from the Wake County Detention Center after his attorney contacted the Franklin County District Attorney's Office about his arrest. (Id. ¶31). Following his release, plaintiff initiated this action by filing a complaint on October 28, 2014.

**COURT'S DISCUSSION**

A.      Standard of Review

The district court reviews de novo those portions of a magistrate judge's M&R to which specific objections are filed. 28 U.S.C. § 636(b). The court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of

4

defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir.1992); see also Edwards v. City of Goldsboro, 178 F.3d 231, 243–44 (4th Cir.1999). A complaint states a claim under 12(b)(6) if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

"Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating the complaint, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir.2009) (citations omitted).

B.   Analysis

   1.   Pleading Standard

Plaintiff objects to the Rule 8 pleading standard as it is analyzed through the lens of the 12(b)(6) standard of review set out above and employed in the M&R. He contends that facts alleged in a civil rights complaint are entitled to deferential review, and asserts that defendants advocated and the magistrate judge employed a heightened pleading standard beyond what is required under Rule 8. (Pl.'s Resp., DE 61). Plaintiff heavily relies upon the Supreme Court's application of the pleading standards to a § 1983 claim in Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163 (1993). However, claims brought in federal court are subject to generally applicable standards established by the entirety of the Supreme Court's Rule 8

5

jurisprudence, including Twombly, 550 U.S. 544, and Iqbal, 556 U.S. 662. Although plaintiff ignores both cases, these later "decisions require more specificity from complaints in federal civil cases than was heretofore the case." Robertson v. Sea Pines Real Estate Cos., 679 F.3d 278, 288 (4th Cir. 2012); see Cook v. Howard, 484 F. App'x 805, 809–10 (4th Cir. 2012). The court must apply the current interpretation required by Rule 8(a), and it does not hold plaintiff to a heightened pleading standard. Plaintiff's objection on this point is without merit.

    2.    § 1983 Claim Against Defendant Wake County

Plaintiff seeks to hold defendant Wake County liable for constitutional and common law torts allegedly committed by deputies of the Wake County Sheriff's Office. To impose liability on a municipality a plaintiff must "plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." Jordan by Jordan v. Jackson, 15 F.3d 333, 338 (4th Cir. 1994). However, local government "cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 690 (1978). Local government may only be held liable for actions over which it has final policymaking authority. City of St. Louis v. Prapotnik, 485 U.S. 112, 123 (1988). The question of whether a county has final policymaking authority depends on how the state has allocated power and responsibility among its various entities. McMillian v. Monroe County, 520 U.S. 781, 786; Dotson v. Chester, 937 F.2d 920, 924 (4th Cir. 1991). "[U]nder North Carolina law, any allegations relating to personnel, training, or other law enforcement policies at the county jail fall within the sheriff's policymaking authority and are not attributable to the county." Jones v. Harrison, No. 4:12-cv-90-D, 2013 WL 1452861, *2 (E.D.N.C. Apr. 9, 2013); see Little v. Smith,

6

114 F. Supp. 2d 437 (W.D.N.C. 2000) ("[A] sheriff is elected by the people, not employed by the county.").

Plaintiff contends that Wake County nonetheless is liable because it provides funding to the sheriff's department. However, "the Supreme Court has rejected plaintiff's argument that the funding of a sheriff's department by a county necessarily equates to control over the sheriff's department." Engleman v. Cumberland County, 2013 WL 157065, *5 (citing McMillian v. Monroe County, 520 U.S. 781, 791–92 (1997)). Plaintiff's constitutional claims against defendant Wake County are based solely upon the alleged actions of defendant Harrison and his deputies, and therefore plaintiff's § 1983 claims against defendant Wake County are dismissed.

3. § 1983 Claims Against Defendant Harrison

Plaintiff asserts § 1983 claims against defendant Harrison in his official capacity and as an individual. Claims against county officials in their official capacity are in all respects, "[f]or purposes of § 1983, . . . treated as suits against the municipality." Santos v. Frederick Cnty. Bd. of Comm'rs, 725 F.3d 451, 469–70 (4th Cir. 2013). "[A] municipality is subject to Section 1983 liability only when its 'policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [plaintiff's] injury.'" Id. (quoting Monell v. Dept. of Social Services of the City of New York, 436 U.S. 658, 694 (1978)). "[A] municipality . . . cannot be held liable unless a municipal policy or custom caused the constitutional injury." Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 166-67 (1993).

"An official policy often refers to 'formal rules or understandings that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over

7

time.'" Semple v. City of Moundsville, 195 F.3d 708, 712-13 (4th Cir. 1999) (quoting Pembaur v. Cincinnati, 475 U.S. 469, 480 (1986)). "While municipal policy is most easily found in municipal ordinances, 'it may also be found in formal or informal ad hoc 'policy' choices or decisions of municipal officials authorized to make and implement municipal policy.'" Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999) (quoting Spell v. McDaniel, 824 F.2d 1380, 1385 (4th Cir.1987)).

"Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." City of Oklahoma City v. Tuttle, 471 U.S. 808, 823–24 (1985). By contrast, "where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation." Id. at 824.

Plaintiff does not identify any official policy proximately causing his constitutional deprivation. Rather, plaintiff argues that defendant Harrison's failure to have a policy for exploring detainees' claims of innocence caused plaintiff's wrongful detention. Plaintiff acknowledges that all deputies have completed inmate processing training, but objects that it is insufficient. While training is a matter of policy, Spell v. McDaniel, 824 F.2d 1380 (4th Cir. 1987), an unsupported allegation that the training and current practices of deputies caused plaintiff's injury does not prove that defendant Harrison was at fault or that there was a causal connection between the training and plaintiff's detention, see Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) ("[N]aked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the

8

line between possibility and plausibility to entitlement for relief."); Engleman v. Cumberland Cnty, No. 5:12-cv-147-FL, 2013 WL 157065, *8 (E.D.N.C. Jan. 15, 2013) ("Here, plaintiff has alleged a single incident of misconduct, and there is nothing in the complaint that would support a finding that the conduct was attributable to a policy or custom of the sheriff. . . ."). Plaintiff has not provided any evidence that additional training would have caused the deputies to treat him differently. See Lytle v. Doyle, 326 F.3d 463, 473–74 (4th Cir. 2003). Plaintiff was in custody pursuant to an order from a Wake County Magistrate, and defendant Harrison's deputies acted properly in accepting him for detention. See N.C. Gen. Stat. § 162-16 ("Whenever the sheriff may be required to serve or execute any summons, order or judgment . . . he shall be bound to do so."). Therefore plaintiff cannot maintain an official capacity claim against defendant Harrison and his claim under § 1983 must be dismissed.

Plaintiff also seeks to hold defendant Harrison liable in his individual capacity under § 1983. Because Harrison was not present for plaintiff's detention, plaintiff proceeds under a theory of supervisory liability. To establish supervisory liability under § 1983, a plaintiff must show that the supervisor had actual or constructive knowledge of his subordinate's conduct, that the supervisor was deliberately indifferent to this knowledge, and that the supervisor's inaction caused the plaintiff's injury. Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994). Constructive knowledge is imputed when "the conduct is widespread, or at least has been used on several different occasions." Id. A single incident or a series of isolated incidents are insufficient to establish supervisory liability. Slakan v. Porter, 737 F.2d 368, 373 (4th Cir. 1984).

Plaintiff fails to show that defendant Harrison had constructive knowledge of any misconduct by his deputies. Plaintiff objects that the existence of previous cases against individual law

9

enforcement officers in Wake County provides sufficient knowledge, but plaintiff fails to describe any relevant examples. Instead, plaintiff exclusively focuses on his own arrest and detention without establishing any other incidents of misconduct by deputies that might have alerted defendant Harrison. Conclusory allegations that defendant Harrison knew or should have known about plaintiff's wrongful detainment are insufficient. Therefore, plaintiff has failed to state a claim against defendant Harrison in his individual capacity and his claim under § 1983 is dismissed.

    4.    § 1986 Claim

Plaintiff brings a cause of action against both defendants for failure to prevent his arrest, in violation of 42 U.S.C. § 1986. Section 1986 operates in conjunction with § 1985 to provide a cause of action against any party with knowledge of a § 1985 conspiracy who fails to attempt to prevent the conspiracy. Brissett v. Paul, No. 97-6898, 1998 WL 195945 *3 (4th Cir. April 6, 1998). A plaintiff may not maintain a claim under § 1986 if he has not alleged a claim under § 1985. See id.; see, e.g., Dial v. Robeson County, 7:14-cv-125-BO, 2014 WL 5793847, *2 (E.D.N.C. Nov. 5, 2014). Plaintiff failed to plead a § 1985 conspiracy in his complaint and does not address this deficiency in his objections to defendants' motion to dismiss. As a result, plaintiff has not alleged facts sufficient to support a claim for relief under § 1986. Therefore plaintiff's § 1986 claim against both defendants fails.

    5.    State Law Tort Claims

Plaintiff also brings state common law tort claims against both defendants for assault and battery, false imprisonment, and negligent infliction of emotional distress. Defendants argue that these claims should be dismissed on the basis of governmental immunity, public official's immunity, and failure to allege sufficient facts to support these claims. Plaintiff conceded these arguments by

10

failing to address them in response to defendants' motion to dismiss.  See Feldman v. Law Enforcement Associates Corp., 955 F. Supp. 2d 528, 536 (E.D.N.C. 2013).  Plaintiff now objects to the M&R's treatment of his tort claims and makes arguments in support of his claims. Nonetheless, plaintiff's failure to respond to defendants' argument in a dispositive motion constitutes a concession.  See id.

Moreover, plaintiff fails to overcome defendant Wake County's governmental immunity and defendant Harrison's public official immunity.  "The doctrine of sovereign immunity bars actions against public officials sued in their official capacities[,]" Beck v. City of Durham, 154 N.C. App. 221, 229 (2002), and "sheriffs and deputy sheriffs are considered public officials for purposes of sovereign immunity," Robinson v. Bladen Cnty Sheriff Dep't, No. 7:10-CV-146-BO, 2010 WL 4054389, at *3 (E.D.N.C. Oct. 14, 2010).  Suits against public officials must allege a waiver of governmental immunity in order to state a claim, and suit against a sheriff requires that the sheriff's liability insurance or surety bond be joined as a necessary party.  Id. at *3–4.  Plaintiff acknowledges that he failed to satisfy both of these requirements.  Therefore plaintiffs' state common law claims against defendant Wake County and defendant Harrison in his official capacity must fail.

Public officials sued in their individual capacities are entitled to public official immunity from claims in tort unless their conduct is malicious, corrupt or outside the scope of their official authority.  Epps v. Duke University, 122 N.C. App. 198 (1996).  Plaintiff fails to allege sufficient facts to show that defendant Harrison acted maliciously or corruptly, and it is clear that the detainment process fell within the regular scope of defendant Harrison's official authority as sheriff. Therefore, plaintiff's state common law claims against defendant Harrison in his individual capacity are dismissed.

11

      6.      Punitive Damages

Plaintiff failed to respond to defendants' arguments against punitive damages, and he makes no objection to the M&R proposal that this case is not eligible for punitive damages. This court agrees that plaintiff has failed to allege facts sufficient to support punitive damages and adopts by reference the reasons recited in the M&R. (DE 56).

## CONCLUSION

Based on the foregoing, upon <u>de novo</u> review of those portions of the M&R to which objections were raised, and upon considered review of the remaining portions of the M&R, the court **ADOPTS** the recommendation of the magistrate judge as set forth herein. The motion to dismiss by defendants Wake County and Harrison (DE 24) is GRANTED.

SO ORDERED, this the 30th day of September, 2015.

_____
LOUISE W. FLANAGAN
United States District Judge

12