IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:14-CV-718-FL

| | | |
|---|---|---|
| LARRY McLEAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| JEFFREY M. LEONARD, individually and in his official and supervisory capacities as the Chief of Police for the Town of Wake Forest, North Carolina Police Department, T.C. WEBB, individually and in his official capacity as a Police Officer with the Town of Wake Forest, North Carolina Police Department and J.J. JEFFERSON, individually and in his official and supervisory capacities as a Police Sergeant with the Town of Wake Forest, North Carolina Police Department and TOWN OF WAKE FOREST, North Carolina, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

This matter is before the court on defendants' motion for summary judgment (DE 66).[1] Plaintiff responded in opposition and defendants replied. In this posture, the issues raised are ripe for ruling. For the following reasons, defendants' motion is granted.

**BACKGROUND**

Plaintiff commenced this action by verified complaint on December 28, 2014, asserting claims against defendants under 42 U.S.C. §§ 1983 and 1986, as well as state tort claims, arising out

---

[1] The court constructively has amended the caption of this order to specify only those defendants that have not been terminated previously from this action, which defendants collectively are referred to herein as "defendants."

of an allegedly unconstitutional traffic stop, arrest, and detention of plaintiff. Plaintiff seeks compensatory and punitive damages, as well as declaratory relief, interest, fees, costs, and other relief as may be just and proper to afford complete relief. Defendants answered on January 9, 2015, denying the material allegations in the complaint. The court dismissed claims against prior-defendants Donnie Harrison and Wake County on September 30, 2015.

Defendants filed the instant motion on December 11, 2015. In support of the motion, defendants submit the following evidence:

1. An affidavit by defendant Webb, with a copy of an order for arrest of plaintiff in case file number 12 CRS 001264 (DE 66-1);

2. An affidavit by defendant Jefferson, with a copy of an electronic process tracking history for case file number 12 CRS 001264 (DE 66-2);

3. A video recording of the traffic stop and arrest at issue in this case (see DE 71);

4. A copy of a dismissal notice of reinstatement in case file number 12 CRS 001264 (DE 67-1); and

5. A copy of a dismissal notice of reinstatement under the same case file number (DE 67-2).

Plaintiff filed a memorandum in opposition to the instant motion on March 31, 2016, attaching the following exhibits:

1. U.S. Census Bureau Quick Facts for the Town of Wake Forest, North Carolina ("Exhibit 2") (DE 91-2);

2. "Summary of Black-White Differences in Traffic Stops and Searches in Wake Forest, NC, 2002-2013," a study conducted by a professor at the University of North

Carolina using data collected by the North Carolina Department of Justice ("Exhibit 3") (DE 91-3);

3. Town of Wake Forest Annual Budget, 2014-2015, pages 1 through 64 ("Exhibit 4A") (DE 91-4);

4. Town of Wake Forest Annual Budget, 2014-2015, pages 65 through 117 ("Exhibit 4B") (DE 91-5);

5. "The Disproportionate Risks of Driving While Black," New York Times study of Greensboro, North Carolina Police Department, allegedly using data collected by the North Carolina Department of Justice ("Exhibit 5") (DE 91-6);

6. Larry McLean Arrest Report ("Exhibit 6") (DE 91-7); and

7. North Carolina Traffic Stop Analysis, a study conducted by a University of North Carolina professor, allegedly using statistics collected by the North Carolina Department of Justice ("Exhibit 7") (DE 91-8).

Defendants filed their reply on April 19, 2016. Subsequently, on April 21, 2016, plaintiff moved to have the court take judicial notice of the exhibits attached to his response memorandum as self-authenticating documents. On June 17, 2016, the court granted in part and denied in part the motion, determining that exhibits 2, 4-A, 4-B, and 6 are admissible and noticed by the court, whereas exhibits 3, 5, and 7, will not be considered. (See DE 98).

## STATEMENT OF FACTS

The facts pertinent to the instant motion may be summarized as follows. Plaintiff is a black male resident of Franklin County, North Carolina. On Friday, February 7, after midnight, plaintiff left a restaurant in Raleigh, and proceeded northward in his vehicle on highway U.S. 1 North/Capital

3

Boulevard ("U.S. 1") in Wake County.  Defendant Webb, a police officer with defendant Town of Wake Forest ("Wake Forest") followed plaintiff on U.S. 1 for several minutes, and during such time observed plaintiff swerving.  Defendant Webb initiated a traffic stop just north of the intersection of U.S. 1 and Wall Road, approximately 0.15 miles inside Franklin County.  Upon collecting plaintiff's driver's license and registration and running a computer search, defendant Webb determined that there was an outstanding order for arrest of plaintiff for felony charges in case number 12 CRS 001264, pending in Franklin County.

On the basis of such order for arrest, defendant Webb and defendant Jefferson, who had arrived on the scene as backup, arrested plaintiff, despite plaintiff's statement to them that the case pertaining to the order for arrest had been dismissed in 2012.  Defendants placed plaintiff in handcuffs and transported him to the Wake County Detention Center, ignoring at that time plaintiff's pleas for defendants to contact Franklin County about the order for arrest.  Defendants presented plaintiff to a Wake County magistrate, who had plaintiff photographed, fingerprinted, and placed in jail under a $100,000.00 secured bond.   Plaintiff remained there for six days, until his fiancee contacted a Franklin County attorney, who contacted the Franklin County district attorney, who dismissed charges in case number 12 CRS 001264 and recalled all outstanding orders for arrest.

Further details regarding the evidence and facts pertinent to the motion will be addressed in the court's discussion.

**COURT'S DISCUSSION**

A.     Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  The party seeking summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate with specific evidence that there exists a genuine issue of material fact requiring trial.  Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986); see United States v. Monsanto Co., 858 F.2d 160, 171 (4th Cir. 1988).  Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249.  In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted).  Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005).  By contrast, when "the evidence as a whole is susceptible of more than one reasonable

5

inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489-90.

B.     Analysis

    1.     Traffic Stop

Plaintiff claims that he was seized in violation of his constitutional rights. The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend IV. "Because an automobile stop is a seizure of a person, the stop must comply with the Fourth Amendment's requirement that it not be unreasonable under the circumstances." United States v. Wilson, 205 F.3d 720, 722–23 (4th Cir. 2000) (en banc) (internal quotations omitted). "As a result, such a stop must be justified by probable cause or a reasonable suspicion, based on specific and articulable facts, of unlawful conduct." Id. (internal quotations omitted). "When an officer observes a traffic offense–however minor–he has probable cause to stop the driver of the vehicle." United States v. Hassan El, 5 F.3d 726, 730 (4th Cir. 1993).

In this case, defendant Webb had probable cause to stop plaintiff's vehicle because defendant Webb observed plaintiff commit a traffic offense. In particular, defendant Webb "observed [plaintiff's] vehicle swerving on the road," after midnight. (DE 66-1 ¶4). In addition, the video recording of the traffic stop, which recording was initiated one minute prior to initiation of blue lights, shows plaintiff's vehicle swerve and cross the fog line on the highway, the solid white line at the right hand side of the road. (Id. ¶5; see id. Ex. A; DE 71, Video Exhibit at 00:57:48).

Such observed driving constitutes a traffic offense justifying a traffic stop. See N.C. Gen. Stat. § 20-146 ("A vehicle shall be driven as nearly as practicable entirely within a single lane and

6

shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety."); United States v. Gallardo-Gonzalez, 331 F. App'x 255, 256 (4th Cir. 2009) (finding probable cause where vehicle moved "across the fog line"); United States v. Williams, 945 F. Supp. 2d 665, 673 (E.D. Va. 2013) (finding probable cause for stop where the vehicle "move[d] onto the boundary line" of the travel lane); see also Thomas v. Fallou, No. CIVA 5:06-2743-RBH, 2008 WL 821822, at *3 (D.S.C. Mar. 25, 2008) ("[T]he plaintiff swerved while driving after midnight in the wee hours of the morning on New Years Day, during a time when many alcohol-related traffic offenses occur. This would give the officers reasonable suspicion to stop the vehicle.").

In addition, defendant Webb acted within the bounds of a permissible stop by running a computer check for outstanding warrants. "[P]ursuant to such a stop, a police officer may request a driver's license and vehicle registration, run a computer check, and issue a citation." United States v. Branch, 537 F.3d 328, 335 (4th Cir. 2008); see United States v. Wilson, 995 F. Supp. 2d 455, 472 (W.D.N.C. 2014) (stating that, as part of a traffic stop, an officer may "run a computer check on the vehicle, check the licenses of the Defendants, and check for outstanding arrest warrants on both Defendants").

Accordingly, plaintiffs' seizure for purposes of a traffic stop did not violate plaintiff's constitutional rights. Moreover, in light of the circumstances presented, qualified immunity protects defendant Webb from facing trial on a claim challenging the traffic stop. Qualified immunity protects government officials performing discretionary functions from liability for civil damages to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

"[I]t protects law enforcement officers from bad guesses in gray areas and ensures that they are liable only for transgressing bright lines." Willingham v. Crooke, 412 F.3d 553, 558 (4th Cir. 2005) (quotations omitted). "Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." Hunter v. Bryant, 502 U.S. 224, 227 (1991). As such, in determining qualified immunity in the context of a Fourth Amendment claim, "the issue is whether arguable probable cause exists." Lea v. Kirby, 171 F.Supp.2d 579, 583 (M.D.N.C.2001).

Here, where defendant Webb observed plaintiff swerving while driving after midnight, and where the video recording shows plaintiff crossing the fog line, it is arguable under North Carolina law that probable cause existed to initiate the traffic stop. Therefore, defendant Webb is entitled to qualified immunity protecting him from trial on this claim.

2. Arrest

Plaintiff claims that he was arrested without probable cause and not on the basis of a valid warrant. "[A]n arrest under a facially valid arrest warrant . . . provides the probable cause finding" necessary to justify the arrest under the Fourth Amendment. Clark v. Link, 855 F.2d 156, 166 (4th Cir. 1988). Accordingly, an arrest made "pursuant to a facially valid arrest warrant" does not present grounds for a Fourth Amendment claim. Porterfield v. Lott, 156 F.3d 563, 568 (4th Cir. 1998).

An "officer's reliance on the . . . probable-cause determination and on the technical sufficiency of the warrant . . . must be objectively reasonable." United States v. Leon, 468 U.S. 897, 922 (1984). In certain limited circumstances an officer "will have no reasonable grounds for believing that the warrant was properly issued," namely: (1) "if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have

8

Case 5:14-cv-00718-FL    Document 99    Filed 07/26/16    Page 8 of 18

known was false except for his reckless disregard for the truth;" (2) if "the issuing magistrate wholly abandoned his judicial role;" (3) if the affidavit supporting the warrant "is so lacking in indicia of probable cause as to render official belief in its existence unreasonable;" and (4) if under the circumstances of the case the warrant is "so facially deficient . . . that the executing officers cannot reasonably presume it be valid." Id. at 922-23.

In this case, defendants Webb and Jefferson had probable cause to arrest plaintiff on the basis of a facially valid arrest warrant. In particular, defendants Webb and Jefferson identified an active order for arrest in case number 12 CRS 001264 for a 2012 charge. (DE 66-1 ¶¶8-9, 17; DE 66-2 ¶¶ 8, 15-16). The order for arrest was issued by the clerk of superior court of Franklin County on October 1, 2012, based upon plaintiff's indictment for three felony offenses. (DE 66-1 at 6 (Ex. B)). The order for arrest, which is similar in function to an arrest warrant under North Carolina law, appeared in a search of "NCAWARE,"[2] an electronic database accessible by defendants Webb and Jefferson in their patrol cars. (DE 66-1, ¶7; DE 66-2 ¶¶ 13-15).

Plaintiff argues that defendants Webb and Jefferson acted unreasonably in relying upon the electronic database, NCAWARE, to determine if an valid outstanding warrant existed, citing Arizona v. Evans, 514 U.S. 1 (1995). Evans, however, is inapposite. There, police officers arrested an individual on the basis of a warrant "that had been quashed 17 days prior to his arrest," in reliance on "an inaccurate computer record . . . in the police computer." Id. at 4 & 6. Here, plaintiff provides no evidence that the order for arrest in case number 12 CRS 001264 had been quashed, nor that the information in the electronic database NCAWARE was incorrect.

---

[2] North Carolina law provides for four types of criminal process, citation, criminal summons, warrant for arrest, and order for arrest, with procedures for each set forth at N.C. Gen. Stat. §§ 15A-301 to 15A-305. "NCAWARE is an acronym for the North Carolina Warrant Repository." State v. Cherry, No. COA14-172, 2014 WL 4292057 *5 (N.C. App. Sept. 2, 2014).

9

While plaintiff suggests that NCAWARE generally is as unreliable as the record-keeping system at issue in Evans, plaintiff has produced no evidence or authority for such suggestion. Indeed, the North Carolina Court of Appeals recently has concluded to the contrary. State v. Cherry, No. COA14-172, 2014 WL 4292057 *6 (N.C. App. Sept. 2, 2014) (holding that "an officer 'possesses' a warrant for purposes of satisfying N.C. Gen.Stat. § 15A–401(e)(1)(a) if the officer has a displayable electronic version of the warrant on an electronic device in the officer's possession," using NCAWARE); see N.C. Gen. Stat. § 15A-301.1 (directing North Carolina Administrative Office of the Courts to develop and maintain an electronic depository for retaining criminal process in electronic form); see also NCAWARE Fact Sheet, Administrative Office of the Courts, available at http://www.nccourts.org/Citizens/JData/Documents/Technology_NCAWARE_Facts.pdf (last visited July 11, 2016) ("The statewide NCAWARE system is a custom-developed, web-based system that was designed, written, tested, and implemented by the North Carolina Administrative Office of the Courts."). Accordingly, plaintiff's argument based on the unreliability of NCAWARE is unavailing.

Plaintiff suggests that his arrest was unconstitutional because a "do not arrest" order was attached to his warrant for arrest, and defendant Jefferson informed defendant Webb of the "do not arrest" order. Plaintiff's suggestion ignores, however, the subsequent determination by defendants Webb and Jefferson that a "do not arrest" order was attached to a warrant in case number 12 CR 050872, whereas the order for arrest in case number 12 CR 001264 was active and did not include such a "do not arrest" order. (DE 66-1 ¶¶16-18; DE 66-2 ¶¶ 8, 12-17). Further, the order for arrest in 12 CR 001264 and documentation showing NCAWARE results does not specify any hold or "do not arrest" order associated with that order for arrest. (See DE 66-1 at 6; DE 66-2 at 8).

10

Accordingly, plaintiff's suggestion that his order for arrest was invalid on the basis of a "do not arrest" order is unavailing.

Plaintiff also suggests that his arrest violated his constitutional rights because defendants Webb and Jefferson arrested plaintiff outside of their territorial jurisdiction. This argument is flawed in several respects. First, plaintiff's assertion that defendants acted outside of their jurisdiction is not supported by the evidence in the record. North Carolina law provides that law enforcement officers of cities, like defendants Webb and Jefferson, "may arrest persons at any point which is one mile or less from the nearest point in the boundary of such city." N.C. Gen. Stat. § 15A-402(c). Here, defendant Webb states that "[t]he location of the traffic stop was approximately 0.15 miles inside the Franklin County limit and within the one mile extra territorial jurisdiction of the Town of Wake Forest Police Department." (DE 66-1 ¶3). Defendant Jefferson states that "[t]he traffic stop was located on U.S. 1 North/ Capital Boulevard, just north of Wall Road and approximately 0.15 miles inside the Franklin County line." (DE 66-2 ¶3). He also states that the stop was "within the one mile extra territorial jurisdiction of the Town of Wake Forest Police Department." (Id.). This court can take judicial notice of the geographic location of the intersection of Wall Road and U.S. 1 North. See, e.g., United States v. Foster, 662 F.3d 291, 295 (4th Cir. 2011) ("We take judicial notice of a map of Lee County, Virginia.").

Plaintiff nonetheless suggests in his verified complaint that he was arrested at a different, unspecified location, "approximately two (2) miles inside the jurisdictional territory of Franklin County, North Carolina." (DE 1 ¶29). The court must accept on summary judgment factual allegations in a verified complaint, if such allegations are "based upon [plaintiff's] own personal knowledge and set forth specific facts admissible in evidence." Williams v. Griffin, 952 F.2d 820,

11

823 (4th Cir. 1991). Here, plaintiff provides no specific allegation to counter defendants' assertion that the arrest took place at the intersection of Wall Road and U.S. 1 North. Indeed, one exhibit plaintiff attaches in opposition to summary judgment confirms that the place of arrest was "US-1/WALL RD, WAKE FOREST." (DE 91-7). Thus, for summary judgment purposes, the court need not credit plaintiff's general assertion that he was arrested two miles inside Franklin County, where it conflicts with specific factual allegations by defendants as well as plaintiff's own exhibit.

In addition, even accepting plaintiff's general allegation as to location, this does not create a genuine issue of fact for trial. Neither the Fourth Circuit nor the Supreme Court has addressed whether it is a violation of a clearly established constitutional right for an arrest to take place outside of the territorial jurisdiction of an arresting officer. One court in this circuit has observed, however, that "[t]he majority view, including decisions in the Courts of Appeal for the Seventh and Eighth Circuits, and more recent decisions in the Tenth Circuit, firmly rejects the notion that a lack of state statutory authority to make an arrest constitutes a per se violation of the Fourth Amendment." United States v. Atwell, 470 F.Supp.2d 554, 573 (D. Md. 2007) (collecting cases); see also Virginia v. Moore, 553 U.S. 164, 171–72 (2008) ("[W]hether or not a search is reasonable within the meaning of the Fourth Amendment has never depend[ed] on the law of the particular State in which the search occurs.") (internal citations omitted). On this basis alone, absent more a more definitive holding by the Supreme Court and Fourth Circuit Court of Appeals, defendants in this case did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818.

In any event, further factors support a determination that the arrest in this case was reasonable, despite the location in Franklin County. In Atwell, the court identified multiple factors

12

courts have used, under varying circumstances, to determine whether an extra-jurisdictional arrest is a violation of the Fourth Amendment:

> Primary to the determination of the reasonableness of any . . . arrest is, of course, the existence of probable cause for the arrest. (factor [1]). . . . Other relevant factors in the reasonableness analysis under the Fourth Amendment include the degree of the officer's compliance with state law (factor 2); the fact that officers were acting between political subdivisions of the same state (factor 3); the presence of exigent circumstances or the lack thereof (factor 4); the location where the offense or crime originated (factor 5); an officer's knowledge that he was without authority to make an arrest (factor 6); "[an officer's] blatant disregard of state law and the chain of command[;]" (factor 7); the motivation behind the state statute limiting territorial jurisdiction and whether it was designed to protect against unreasonable police behavior (factor 8); and the state's interest in making a particular type of arrest (factor 9).

Atwell, 470 F.Supp.2d at 574–75 (footnotes and citations omitted); see Williams v. Canady, No. 5:10-CV-558-FL, 2014 WL 51245, at *5 (E.D.N.C. Jan. 7, 2014) (same).

The primary factor is satisfied by the existence of a valid order for arrest that commanded officers to "take [plaintiff] into custody and bring [plaintiff] before a judicial official." (DE 66-1). The reasonableness of the arrest is further supported by the circumstances presented to officers in this case: plaintiff was traveling in a vehicle on a road traversing the border between two counties, political subdivisions of the same state. Defendant Webb contacted the Franklin County Sheriff's Department to ask if they wanted to take over the matter, and the Sheriff's Department "did not have an available deputy to take [plaintiff]." (DE 66-1 at 3).[3]

---

[3] Plaintiff's contrary general allegation in his complaint that "Defendants proceeded without contacting either the on-duty magistrate for Franklin County or the Franklin County Sheriff's Department," (DE 1 ¶30), is not based upon personal knowledge and need not be credited in the face of defendant's specific allegation to the contrary. See Williams, 952 F.2d at 823. Even accepting as true, however, that defendants did not contact Franklin County officials prior to arrest of plaintiff, based upon the additional factors and law set forth above, the location of the arrest in Franklin County is insufficient to present a genuine issue for trial.

13

Further, with respect to state law, although the North Carolina Supreme Court has not directly addressed the issue, the North Carolina Court of Appeals has held that "according to well-established federal constitutional law and our own controlling precedent, a determination that [an officer] lacked the statutory authority to stop Defendant's vehicle does not have any bearing upon whether the stopping of Defendant's vehicle violated the Fourth Amendment." State v. Verkerk, 747 S.E.2d 658, 669 (N.C. Ct. App. 2013); see State v. Gwyn, 103 N.C. App. 369, 371 (1991) ("[T]he defendant's illegal arrest beyond the policeman's territorial jurisdiction did not render the seizure and search unreasonable since the patrolman had probable cause."); State v. Afflerback, 46 N.C.App. 344, 347 (1980) ( "[N]otwithstanding a technical violation of a police officer's jurisdictional statute, the officer had probable cause to arrest the defendant and evidence seized incident thereto was admissible.").

Plaintiff suggests that defendants Webb and Jefferson should have taken plaintiff before a Franklin County magistrate rather than the Wake County magistrate. Nothing in the order for arrest, however, requires officers to take plaintiff to a magistrate in Franklin County. Based upon information in NCAWARE, defendant Webb determined that the order for arrest had been "transferred to the Raleigh Police Department for service." (DE 66-1 ¶9). The order for arrest showed a Raleigh address for plaintiff. (DE 66-1 at 6). Furthermore, the "process tracking" report in NCAWARE specified that the order for arrest had for a time been assigned to the Raleigh Police Department. (DE 66-2 at 8). Given an officer's duty under state law to execute a valid warrant, see State v. Harvey, 281 N.C. 1, 9 (1972), defendants did not act unreasonably under the circumstances in taking plaintiff into custody for presentation before a magistrate in Wake County.

14

In sum, a reasonable officer in defendants' position would not have reason to believe that their conduct in arresting plaintiff violated "clearly established statutory or constitutional rights" of plaintiff. Harlow, 457 U.S. at 818. Accordingly, qualified immunity shields defendants from liability on plaintiff's claims for wrongful arrest, and summary judgment therefore must be granted in favor of defendants.

3. Excessive Force

Plaintiff argues that defendants Webb and Jefferson used excessive force on him, because they had no basis to stop or arrest plaintiff. Given that defendants had a reasonable basis to stop and arrest plaintiff, as set forth above, defendants did not apply excessive force in placing plaintiff in handcuffs, as shown in the video of his arrest. (See DE 71, Video Exhibit at 01:08:08-01:09:30). "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham v. Connor, 490 U.S. 386, 396 (1989); see N.C. Gen. Stat. § 15A-401(d) (authorizing use of force "to effect an arrest of a person"). Accordingly, plaintiff has failed to present a genuine issue of fact as to this claim.

4. Official Capacity Claims

Claims against city officials in their official capacity are in all respects, for purposes of Section 1983, "treated as suits against the municipality." Santos v. Frederick Cnty. Bd. of Comm'rs, 725 F.3d 451, 469-70 (4th Cir. 2013). "[A] municipality is subject to Section 1983 liability only when its 'policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [plaintiff's] injury.'" Id. (quoting Monell v. Dept. of Social Services of the City of New York, 436 U.S. 658, 694 (1978)).

15

"An official policy often refers to 'formal rules or understandings that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time.'" Semple v. City of Moundsville, 195 F.3d 708, 712-13 (4th Cir. 1999) (quoting Pembaur v. Cincinnati, 475 U.S. 469, 480 (1986)). "While municipal policy is most easily found in municipal ordinances, 'it may also be found in formal or informal ad hoc 'policy' choices or decisions of municipal officials authorized to make and implement municipal policy.'" Edwards v. City of Goldsboro, 178 F.3d 231, 244-45 (4th Cir. 1999) (quoting Spell v. McDaniel, 824 F.2d 1380, 1385 (4th Cir.1987)). In addition, municipal policy may include "practices so persistent and widespread as to practically have the force of law." Connick v. Thompson, 563 U.S. 51, 61 (2011).

"Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985). By contrast, "where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation." Id. at 824.

Plaintiff's claims against defendants in their official capacity fail because plaintiff has not alleged an underlying constitutional violation. See, e.g., Evans v. Chalmers, 703 F.3d 636, 654 (4th Cir. 2012) (stating that "because we hold that all plaintiffs failed to state predicate § 1983 claims against the individual officers, we must also hold that all plaintiffs have failed to state supervisory liability [and] Monell liability" claims); Young v. City of Mount Ranier, 238 F.3d 567, 579 (4th Cir.

2001) ("[A] section 1983 failure-to-train claim cannot be maintained against a governmental employer in a case where there is no underlying constitutional violation by the employee.").

In addition, plaintiff has not forecasted sufficient evidence to create a genuine issue of fact as to liability of defendants in their official capacity. Plaintiff suggests, for example, that he was injured as a result of defendant Leonard's policy to "[c]onduct aggressive traffic enforcement," and "[a]ctively pursue individuals with outstanding warrants for arrest." (DE 91-5 at 4). Those policies, however, are not themselves unconstitutional. Accordingly, "considerably more proof than the single incident will be necessary . . . to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation." Tuttle, 471 U.S. at 824. Here, aside from lack of proof of a constitutional deprivation in this case, plaintiff has failed to proffer admissible evidence of a constitutional deprivation resulting from the policy in any other instance. Demographic statistics proffered by plaintiff, as well as inadmissible arrest and traffic studies, see Order (DE 98) at 3-6, are insufficient to meet this burden.

Accordingly, defendants are entitled to summary judgment on plaintiff's official capacity claims.

5. Section 1986 Claim

In his complaint, plaintiff asserts a claim under 42 U.S.C. § 1986 for failure to prevent unconstitutional conduct. Plaintiff does not offer any argument in support of this claim in response to defendants' motion for summary judgment. In any event, where plaintiff has not proffered any evidence of a conspiracy to deprive constitutional rights, plaintiff's claim based upon failure to prevent such conspiracy must be dismissed. See 42 U.S.C. § 1986; Hinkle v. City of Clarksburg,

17

W.Va., 81 F.3d 416, 423 n.4 (4th Cir. 1996); Barrett v. Bd. of Educ. of Johnston Cty., N.C., 13 F. Supp. 3d 502, 513 (E.D.N.C. 2014).

      6.      State Law Claims

In light of the court's resolution of plaintiff's constitutional claims, plaintiffs state law claims fail for similar reasons. Plaintiff's claims for assault and battery fail because the force of handcuffs employed to effect a valid arrest in this instance was authorized by statute and not "unnecessary," "excessive," or "unusual" under the circumstances. Todd v. Creech, 23 N.C. App. 537, 539 (1974); N.C. Gen. Stat. § 15A-401(d). Plaintiff's claim of false imprisonment fails because defendants Webb and Jefferson detained plaintiff pursuant to a valid arrest warrant. See Fowler v. Valencourt, 334 N.C. 345, 348 (1993). Plaintiff's claim of negligent infliction of emotional distress fails because it is premised upon illegality of arrest, excessive physical force, and inadequate procedures for warrant verification, (DE 1 ¶78), which premises are belied by the record. In addition, the terms and conditions of plaintiffs detention at the Wake County Detention Center, underlying portions of plaintiff's state law claims, are not attributable to actions of defendants, but rather intervening decision by a magistrate. (See DE 1 ¶¶ 31-33).

In sum, defendants are entitled to summary judgment on plaintiff's state law claims.

## CONCLUSION

Based on the foregoing, defendants' motion for summary judgment (DE 66) is GRANTED. The clerk is DIRECTED to close this case.

SO ORDERED, this the 26th day of July, 2016.

                                                  LOUISE W. FLANAGAN
                                                  United States District Judge